NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SHERMAN B., | ) | |
| | ) | Supreme Court No. S-15075 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-10-00134 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT[*] |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | No. 1473 – January 8, 2014 |
| CHILDREN'S SERVICES, and | ) | |
| KAREN J. | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Glenda Kerry, Law Office of Glenda J. Kerry, Girdwood, for Appellant. Julia B. Bockmon, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee State of Alaska. Christi A. Pavia, Pavia Law Office LLC, Anchorage, for Appellee Karen J.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

_____

[*]     Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

Sherman B.[1] appeals the superior court's decision terminating his parental rights. He argues that his daughter, Khloe, is not a child in need of aid, that he has adequately remedied any conditions that previously placed her in need of aid, that the Office of Children's Services (OCS) did not make reasonable efforts to reunite the family, and that terminating his parental rights is not in Khloe's best interest. We affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Khloe was born on May 1, 2010; she tested positive for both marijuana and cocaine at birth. OCS took Khloe into emergency custody shortly thereafter. Khloe's father was unknown at the time, and she was placed in a foster home. Two months later, Sherman was identified as Khloe's father through paternity testing.

Sherman has at least three other children: Darcy, Georgina, and Kadin.[2] Sherman's parental rights have been terminated with respect to Darcy and Kadin, and Georgina resides with Sherman's aunt in New York.[3] Sherman was determined to be Khloe's father before his parental rights to Darcy were terminated; OCS began including Khloe in Sherman's weekly visits with Darcy.[4] Sherman's initial case plan required a parenting assessment to gauge Sherman's "parenting skills and dedication." In March

---

[1]    The names have been changed to protect the privacy of the parties.

[2]    *See Sherman B. v. State, Dep't. of Health & Soc. Servs.* (*Sherman II*), 310 P.3d 943 (Alaska 2013); *Sherman B. v. State, Dep't. of Health & Soc. Servs.* (*Sherman I*), 290 P.3d 421 (Alaska 2012).

[3]    *Sherman II*, 310 P.3d at 946-47;  *Sherman I*, 290 P.3d at 423.

[4]    *See Sherman I*, 290 P.3d at 423.

2011, OCS reported that Sherman had made "substantial progress in remedying the conduct and conditions that cause[d] [Khloe] to be a child in need of aid."

On March 14, however, Sherman informed OCS that he was leaving the state to deal with some family issues and that he did not know when he would return. OCS later discovered that Sherman had gone to New York to remove Georgina from his aunt's home. Around this same time, OCS learned that Khloe's birth mother had been making unauthorized visits to see Khloe at Sherman's home.

After Sherman returned from New York, OCS planned for twice-weekly monitored visits at an OCS facility. OCS also suggested parenting classes and a psychological assessment with a parenting component because of Sherman's lack of "concern for what his actions were doing to his children." But Sherman refused to participate in any sort of psychological assessment.

OCS resumed Sherman's visits with Khloe and Darcy on May 12. These visits did not go well. Khloe would scream from the time she arrived for visitation until she left. Sherman, in turn, acted inappropriately with the foster parents, OCS staff, and his children. These visits ended in June 2011, when Sherman left to go fishing in Kenai.

In September 2011, OCS contacted a parenting coach who was willing to work with Sherman if he underwent an intensive parenting class, but Sherman said he had already completed parenting classes, and he refused to take more. OCS also referred Sherman to Cook Inlet Tribal Council for monitored visitation. But OCS eventually canceled the visits at Cook Inlet Tribal Council because the visits became too traumatic for Khloe.

In November 2011, the superior court held an evidentiary hearing to determine whether it was in Khloe's best interests to continue visitation. A Cook Inlet Tribal Council social worker testified that Sherman would not listen to directions and that he was trying to force Khloe to interact with him. OCS requested that Sherman's visits

be conditioned on a parenting assessment to help Sherman understand and meet the needs of his children. OCS informed the court that Sherman had refused to attend an assessment with Dr. Michael Rose the prior August, but they had scheduled another assessment with Dr. Melinda Glass for the following week. The court granted the OCS request and advised Sherman that the parenting assessment would be the "linchpin" for further visitation.

A few days later, Sherman asked the court to narrow the scope of the assessment so that it would not require a psychological evaluation. The court denied the motion, noting that a psychological evaluation was required to assess Sherman's impulsiveness and lack of empathy. But Sherman continued to refuse the assessment.

In February 2012, OCS filed a petition to terminate Sherman's parental rights in order to allow Khloe's adoption by her foster parents. Sherman now appeals from the superior court's order granting the petition.

## III.    STANDARD OF REVIEW

Under Alaska Statute 47.10.088(a), a superior court must make three findings by clear and convincing evidence before terminating parental rights. First, the court must find that "the child has been subjected to conduct or conditions described in AS 47.10.011" and is thus a child in need of aid.[5] Second, the court must find that the parent has failed to remedy, within a reasonable time, the conduct or conditions that placed the child at substantial risk of harm.[6] Third, the court must find that OCS made reasonable efforts under AS 47.10.086 to promote reunification.[7] In addition, under Alaska Child In

---

[5]    AS 47.10.088(a)(1).

[6]    AS 47.10.088(a)(2).

[7]    AS 47.10.088(a)(3).

Need of Aid Rule 18, the court must find by a preponderance of the evidence that termination of parental rights is in the child's best interests.[8]

We review for clear error a superior court's factual findings on whether a child is in need of aid, whether the parent failed to remedy the conduct or conditions that placed the child in need of aid, and whether termination of parental rights is in the best interest of the child.[9] Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact; we review the legal part of this question de novo.[10]

## IV.    DISCUSSION

At the conclusion of the trial on the petition to terminate Sherman's parental rights, the superior court found by clear and convincing evidence that Khloe was a child in need of aid because Sherman had "fail[ed] to provide the child with the care and control necessary for the child's physical and mental health" and "fail[ed] to participate in a suitable plan or program designed to reunite him with the child."[11] The court also found by clear and convincing evidence that both Sherman and Khloe's mother had "failed to remedy the conduct and conditions . . . that place the child at substantial risk of harm," that "reasonable efforts have been made to provide remedial services and rehabilitative programs to the parents and child designed to promote reunification," and that, by "a preponderance of evidence . . . it is in the best interests of the child [to terminate] the parental rights" of Sherman and Khloe's mother. Sherman argues that each of these findings was erroneous.

---

[8]    CINA Rule 18(c)(3).

[9]    *Sherman II*, 310 P.3d at 948-49.

[10]    *Id*. at 949 (citing *Sherman I*, 290 P.3d at 428) (quoting *M.W. v. State, Dep't of Health & Soc. Servs.*, 20 P.3d 1141, 1143 (Alaska 2001)).

[11]    AS 47.10.088(a)(1); CINA Rule 18(c)(1)(A); *see* AS 47.10.011(1), (9).

**A.  The Superior Court Did Not Clearly Err When It Found That Khloe Was A Child In Need Of Aid.**

A child is in need of aid if "a parent or guardian has abandoned the child . . . and the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid."[12] Abandonment is defined as "conscious disregard of parental responsibilities toward the child by failing to provide reasonable support, maintain regular contact, or provide normal supervision, considering the child's age and need for care by an adult."[13] Abandonment includes instances where a parent "failed to participate in a suitable plan or program designed to reunite the parent or guardian with the child."[14]

In this case, the court specifically advised Sherman that he needed "to comply with the case plan" and that the parenting assessment would "be the linchpin" for further visitation. The superior court reasonably concluded that a psychological evaluation was critical to address the court's concern over Sherman's lack of empathy and his impulsivity. Even if Sherman did not agree with this plan, the court made it clear that compliance was necessary to allow him to build a relationship with his daughter and learn how to meet her needs. But Sherman consistently refused to undergo the parenting assessment. We conclude that the superior court did not commit clear error when it relied on Sherman's non-compliance with his case plan to find that Sherman had abandoned Khloe.[15]

---

[12]  AS 47.10.011(1).

[13]  AS 47.10.013(a).

[14]  AS 47.10.013(a)(4).

[15]  We do not address the superior court's alternative finding of neglect because the finding of abandonment was sufficient to support the conclusion that Khloe
(continued...)

**B.    The Superior Court Did Not Clearly Err When It Concluded That Sherman Failed To Remedy The Conditions That Placed Khloe In Need Of Aid.**

The superior court found that Sherman "refused to participate in the case plan as it relates to a critical component which is the parenting assessment with a psychological evaluation and that by doing so, he does not have the . . . skills and capacity to meet the very special and fragile needs of [his daughter]."

The record confirms that Khloe is a particularly fragile child with limited self-control; she has frequent nightmares and is easily frustrated. The record also confirms that OCS tried to convince Sherman to participate in a parenting assessment and a psychological evaluation to help him begin to address Khloe's needs, but Sherman refused to participate in any psychological evaluation. We affirm the superior court's finding that Sherman did not remedy the conditions that placed Khloe at substantial risk of harm.

**C.    The Superior Court Did Not Err When It Concluded That OCS Made Reasonable Efforts To Reunify Sherman With Khloe.**

After Sherman was identified as Khloe's father, OCS set up visitation, and when Sherman made progress, OCS advanced the visits to his home. After Sherman's trip to New York, OCS continued to attempt to set up visitation and a parenting assessment. When the visits at the OCS facility were unsuccessful, OCS contacted Cook Inlet Tribal Council for monitored visitation. OCS also set up referrals and appointments with parenting coaches and evaluators.

---

[15](...continued)
was a child in need of aid.

-7-                                                                                                      1473

In one of Sherman's prior cases, we noted that his willingness "to participate in services is relevant to the scope of the efforts OCS must provide."[16] In this case, Sherman refused to cooperate with the reasonable services that OCS provided. An OCS social worker testified that eventually Sherman "wasn't willing to work with the department anymore." When OCS arranged for the visitation at Cook Inlet Tribal Council, Sherman would not accept help from the staff. And Sherman consistently refused to complete a parenting assessment in order to allow visitation to continue. The record supports the court's findings on this issue, and we agree with the superior court's ultimate conclusion that OCS made reasonable reunification efforts.

**D.     The Superior Court Did Not Err When It Concluded That Termination Of Sherman's Parental Rights Was In Khloe's Best Interest**

The superior court based its best interests finding on the totality of Sherman's behavior. Khloe has special needs that Sherman simply does not seem to understand. Sherman left the state for several weeks without providing adequate notice to OCS and did not have any contact with Khloe during his absence. When he returned, Sherman's behavior upset Khloe during several visits, and he refused to comply with a parenting assessment intended to help him become a better parent.

Khloe has supportive foster parents who are willing to adopt her. Her foster mother quit her jobs as a day care provider and a nurse to care for Khloe on a daily basis. Khloe is attending weekly therapy to increase her fine motor control and tone her muscles. She sees a behavioral therapist so that she can better cope with anxiety and panic attacks. The superior court did not commit clear error when it determined that it was in Khloe's best interests to terminate Sherman's parental rights so that Khloe is available for adoption by her foster parents.

---

[16]     *Sherman I*, 290 P.3d at 432.

## V.    CONCLUSION

We AFFIRM the superior court's order terminating parental rights.